JOSEPHINE H. JOHNSON v. GEORGE W. OAKES and Another.[1]

February 4, 1910.

Nos. 16,445—(226).

**Negligence — Verdict Sustained by Evidence.**

Respondent's intestate was killed by the falling of a pile occasioned by the removal of a cap which held it, together with three other piles, constituting a bent in a railroad trestle. Considering the height and character of the piles and the manner in which they were braced, and although due inspection would not have disclosed that the pile which fell had not been driven into the ground, and although the particular manner in which the accident happened

[1] Reported in 124 N. W. 633.

[Note] For knowledge as an element of employer's liability, see note in 41 L.R.A. 33.

.could not reasonably have been anticipated, the evidence was sufficient to justify the jury in finding that an unsafe method had been adopted for removing the caps from the bents.

Action in the district court for Ramsey county by the executrix of the estate of Mauritz Johnson, deceased, to recover $5,000 for the death of her intestate by reason of defendants' negligence. The case was tried before Bunn, J., and a jury which returned a verdict in favor of plaintiff for the amount demanded. From an order denying defendants' motion for judgment notwithstanding the verdict or for a new trial, they appealed. Affirmed.

*Morton Barrows* and *Bracelin & Cronin,* for appellants.

*John D. O'Brien* and *T. P. McNamara,* for respondent.

LEWIS, J.

The Northern Pacific Railway Company had constructed a trestle several miles long across low and swampy land in the northern part of the state, with the intention of subsequently filling it in with gravel. The piles were white and Norway pine, and were driven in rows of four, called "bents," the two center piles being perpendicular, so that one would come under each rail when the track was laid, and the two outside piles were inclined at a slight angle and served as props to the others. Across the top of each bent was placed a heavy oak timber cap, twelve by sixteen, and fourteen feet long, fastened to each piling with a three quarters inch drift bolt twenty-six inches long. The bents were sixteen feet distant from each other. As this trestle was originally constructed, braces were nailed across each side of each bent. About two years thereafter appellants entered into a contract with the railway company to take off the caps from the bents for a certain distance, drive in two additional piles, making six in each bent, and put on a new and longer cap, for the purpose of making the trestle sufficiently strong for the passage of trains without filling in. To accomplish this work appellants constructed a track along one side of the trestle on which they placed a truck with a.

pile driver and engine. Respondent's intestate, Mauritz **Johnson,**
was employed as hoisting engineer.

The method of removing the caps was as follows: The pile driv-
er was located near the outside piling, which brought the lead of
the driver within about a foot of the end of the cap, the head or top
extending some thirty feet above. A cable was adjusted by pulleys
at the head of the lead, and operated around a drum at the engine.
The cable was fastened to the cap, a distance of three or four feet
from the derrick, and, when all was ready, signal was given to the
engineer to start the engine, the drum revolved, and the cap was
lifted from the piling, the bolt in the pile next to the driver drawing
out first, then the second, third, and fourth in succession. Four or
five of these caps had been removed in this manner, and the men
had moved to the next bent, attached the cable, and gave the signal
to the engineer. The cap lifted, and the bolts pulled loose from the
first three piles. The fourth pile had not been driven into the ground,
but rested on a mud-sill about a foot below the surface, and, when
it was released from the other piles, bounced against the lead, which
loosened the bolt, and it fell against the engine, striking and killing
the engineer. Respondent recovered a verdict, and appellants' po-
sition here is that the evidence shows conclusively that they were
not at fault.

At the time appellants entered into the contract to perform this
work they had no knowledge that the pile in question had not been
driven into the ground, the same as the others in the structure. The
bent involved reached about forty feet above the ground, and the
pile that fell was to all appearances sound and firm enough to permit
the removal of the cap. Ordinary observation or inspection would
not have disclosed the true condition of the pile, and it will be as-
sumed that appellants were not negligent by the mere omission to
inspect this particular pile, and in failing to discover whether or
not it was driven into the ground. Negligence is based upon the
adoption by appellants of the unsafe method of removing the caps,
and that they are liable for the result which followed, even though
they could not reasonably have anticipated the fact that some par-
ticular pile was not driven sufficiently into the ground and would fall

upon the removal of the cap. This was the theory adopted by the trial court in submitting the case to the jury. Appellants insist that this principle of law has no application to the facts in this case, for the reason that the system pursued in removing the caps was perfectly safe as to those piles which were driven into the ground, and that they cannot be held liable for not knowing a condition which they would not have discovered in the exercise of ordinary care.

When the men were engaged in removing the cap from the bent immediately preceding the one in question, the fourth pile broke off near the ground, not being strong enough to resist the power exerted in getting off the cap, and it fell, but occasioned no injury. This incident is relied on somewhat by respondent as indicating the danger surrounding the work; but, as we view the case, it is not important.

Let it be assumed that, so far as a general inspection would disclose, all the piles were driven into the ground, and that the one in question was apparently strong enough to withstand the pressure applied, if it had been driven into the ground, yet here was a condition attended with a certain amount of appreciable danger, although it was not apparent in what particular manner it might occur. There were many rows of heavy piling standing forty feet above the ground, those in each row fastened together by the caps only. The soil was of a more or less unstable character. Although the contractors had no personal knowledge that any particular one of these piles was not securely driven into the ground, the braces had been removed, and no provision whatever was taken to guard against the falling of those large and heavy logs from some such cause as breakage or instability when the caps were pulled off. There was an easier and safer way of removing the caps without exposing the men to the danger met with on this occasion. The bolts could have been withdrawn and the caps taken off without applying the severe strain required in the method used. The system adopted was particularly dangerous with respect to the piling farthest from the cable. The strain was undoubtedly very great, for the reason that there was no direct pull immediately over the pile. The pull was at an angle,

110 M.—7.

and if anything should prove wrong in the stability of the pile an accident 'was likely to follow.

The evidence warrants the conclusion that the plan was attended with danger, and the case is controlled by the principle that, "negligence being established, the person guilty of it is liable for its consequences, whether they be such as he could or ought to have foreseen." Barrows, Negligence, p. 13; Christianson v. Chicago, St. P., M. & O. Ry. Co., 67 Minn. 94, 97, 69 N. W. 640; Baker v. Great Northern Ry. Co., 83 Minn. 184, 86 N. W. 82.

Affirmed.

O'BRIEN, J., took no part.